UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JON L. MOSELEY, personal representative of the Estate of Jon Moseley, deceased, JON L. MOSELEY, TONDALAYA MOSELEY, and MINOR CHILD K.G., <br><br>  Plaintiffs, <br><br> v. <br><br> SUZUKI MOTOR OF AMERICA, INC. and SUZUKI MOTOR CORPORATION, <br><br>  Defendants. | Case No. 1:17-cv-00230-DCN <br><br> **MEMORANDUM DECISION AND ORDER** |

## I. OVERVIEW

This matter comes before the Court on a Motion to Dismiss filed by Defendants Suzuki Motor of America, Inc. ("SMAI") and Suzuki Motor Corporation ("SMC"). Dkt. 9. After the Motion was fully briefed, the Court held oral arguments and took the Motion under advisement. After fully considering the arguments presented by the parties, for the reasons outlined below, the Court finds good cause to GRANT the Motion and dismiss this case.

## II. FACTS

This wrongful death case centers on a crash involving a 2008 Suzuki GSX-R750. Defendant SMC (a Japanese corporation) designed and manufactured the motorcycle in Japan. American Suzuki Motor Corporation ("ASMC")—a now defunct corporation—

distributed the motorcycle to an independent dealer in Utah on May 28, 2008. Emily Phelps purchased the motorcycle from this independent dealer in Utah on June 9, 2008. The chain of ownership is not clear, but at some point Aleah Montalvan became the owner of the motorcycle.

Montalvan permitted Decedent, Jon Moseley, to drive the motorcycle on or about May 31, 2015, in Twin Falls, Idaho. While Decedent was riding the motorcycle in the parking lot of a Target store in Twin Falls the front brakes failed. Decedent attempted to stop the motorcycle, but was unsuccessful. The motorcycle then hit a curb near the front of the store. The impact propelled the Decedent into the side of the Target building. An ambulance transferred the Decedent to the St. Alphonsus Regional Medical Center in Boise, Idaho, where the Decedent subsequently died. The cause of death was blunt force trauma due to the motorcycle accident.

Prior to the crash, on or about November 18, 2013, Defendants had issued an "Important Safety Recall" involving the break system used in the motorcycle at issue in this case. Plaintiffs maintain that neither Decedent nor "any prior owners" of the motorcycle were notified of the recall.

Plaintiffs are relatives of Decedent. They brought suit against Defendants on May 26, 2017. They assert three causes of action: (1) negligence, (2) wrongful death and loss of familial relationship, and (3) strict products liability. Plaintiffs seek both compensatory and punitive damages.

On November 14, 2017, Defendants filed the instant Motion to Dismiss. In their response brief, Plaintiffs agreed to voluntarily dismiss SMAI from this suit. After the

dismissal of SMAI, only two arguments for dismissal remain in this case. The only remaining Defendant, SMC, argues the Court should dismiss this case because (1) the service of process was insufficient and (2) it is not subject to the Court's personal jurisdiction. The Court first addresses the issues of personal jurisdiction, as that issue is dispositive in this case.

### III. LEGAL STANDARD

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (citing Fed. R. Civ. P. 4(k)(1)(A)). "In order for an Idaho court to exert jurisdiction over an out-of-state defendant, two criteria must be met; the act giving rise to the cause of action must fall within the scope of [Idaho's] long-arm statute and the constitutional standards of due process must be met." *Saint Alphonsus Reg'l Med. Ctr. v. State of Wash.*, 852 P.2d 491, 494 (Idaho 1992). Idaho Code § 5-514 confers personal jurisdiction over any "cause of action arising from . . . [t]he commission of a tortious act within [Idaho]." *See* Idaho Code § 5-514(b). Under this standard, the tortious act "need not take place in Idaho; all that is required is that the injury is alleged to have occurred in Idaho." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Aerohawk Aviation, Inc.*, 259 F. Supp. 2d 1096, 1102 (D. Idaho 2003). "Because Idaho's long-arm statute, codified in Idaho Code § 5-514, allows a broader application of personal jurisdiction than the Due Process Clause, the Court need look only to the Due Process Clause to determine personal jurisdiction." *Cornelius v. DeLuca*, 709 F. Supp. 2d 1003, 1010 (D. Idaho 2010).

"The Due Process clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, __ U.S. __, 134 S.Ct. 1115, 1121 (2014). A nonresident defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Since the Supreme Court's "seminal decision in *International Shoe*, [its] decisions have recognized two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court*, __ U.S. __, 137 S. Ct. 1773, 1779–80 (2017). "For an individual, the paradigm forum for the exercise of *general jurisdiction* is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.*, (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* "Specific jurisdiction is very different. In order for a state court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum." *Id.* (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014)). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' For this reason, 'specific

jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (quoting *Goodyear*, 564 U.S. at 919).

Plaintiffs do not argue that the Court has general jurisdiction over SMC. Therefore, the Court focuses solely on specific jurisdiction. "There are three requirements for a court to exercise specific jurisdiction over a nonresident defendant: (1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[ ] himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "[T]he burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable.'" *Id.* (quoting *Burger King Corp. v Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

In cases like this, involving products liability, the Supreme Court "has stated that a defendant's placing goods into the stream of commerce 'with the expectation that they will be purchased by consumers within the forum State' may indicate purposeful availment." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881–82 (2011) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) (finding that expectation lacking)). However, the Supreme Court has also clarified that a "defendant's

transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *Id.*

Finally, "[w]here, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Schwarzenegger*, 374 F.3d at 800. The Court must take as true "uncontroverted allegations in the complaint" and must resolve in the plaintiff's favor any "[c]onflicts between [the] parties over statements contained in affidavits." *Id.*

## IV. ANALYSIS

In arguing for a finding of specific jurisdiction, Plaintiffs first generally explain SMC's global and North American presence:

> SMC sells its products around the world and thousands of its products get funneled to the United States every year. In 2016, SMC sold about 276 million dollars worth of product to North America alone. SMC designs its corporate structure to sell to the United States market and intends for its products to end up in American consumer's hands.

Dkt. 13, at 9 (citations omitted). These facts are inconsequential as they have no bearing on whether SMC specifically targeted Idaho. Plaintiffs next argue that "SMC has purposefully availed itself to the State of Idaho and established minimum contacts through its former and current subsidiaries" (ASMC and SMAI)[1]. *Id.* These subsidiaries "direct[] the sale of [SMC's] products in the United States[,]" "contract[] with local

---

[1] The subsidiary that distributed the motorcycle at issue in this case was ASMC. In 2013, ASMC filed for Chapter 11 bankruptcy. Later, SMC created SMAI to replace ASMC.

distributors in 49 states, and direct[] the sale of its products in those states." *Id.* at 10–11. "Idaho is one of those states." *Id.* at 11.

"It is well established that, as a general rule, where a parent and a subsidiary are separate and distinct corporate entities, the presence of one . . . in a forum state may not be attributed to the other[.]" *Axiom Foods*, 874 F.3d at 1071 (quoting *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007). Plaintiffs seem to argue that SMC and its subsidiaries are quite close. They point out that "SMAI [wa]s founded by SMC, [is] directly managed by SMC, and is the exclusive method by which SMC distributes its products to the United States." Dkt. 13, at 10. However, Plaintiffs have not "spelled out an alter ego theory of liability allowing [the Court] to attribute the activities of the parent entity to the subsidiary." *Axiom Foods*, 874 F.3d at 1071 n.5 ("[A] plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." (citation omitted)). Thus, even assuming SMAI or ASMC might have purposefully availed themselves of the privileges of conducting activities in the State of Idaho, the Court cannot attribute those acts to SMC. Moreover, absent from the record are any concrete facts tying either subsidiary directly to Idaho specifically. The Court finds it notable that the motorcycle at issue in this case was purchased in Utah, not in Idaho, and Plaintiffs have failed to explain how the motorcycle even ended up in Idaho.

Finally, binding case law compels the conclusion that this Court lacks personal jurisdiction over SMC. *J. McIntyre Machinery*, a 2011 products-liability case, is

particularly instructive. In that case, the Supreme Court reversed a New Jersey court's determination that it had personal jurisdiction over the defendant. 564 U.S. 873. The plaintiff injured his hand in New Jersey with a machine manufactured by the defendant in England, where the defendant was incorporated and operated. *Id.* at 878. The defendant-manufacturer had sold its machines to an independent distributor who agreed to sell the machines in the United States. *Id.* The defendant also attended a few conventions in the United States with its distributor, but none of those conferences took place in New Jersey. *Id.* Thus, only the distributor, but not the manufacturer, purposefully availed itself of the benefits of doing business in New Jersey. The fact the manufacturer had placed the machine in the stream of commerce with the knowledge that the distributor might sell it in New Jersey was insufficient to establish purposeful availment or minimum contacts in that state.

The instant case is not identical to *J. McIntyre Machinery*; unlike in *J. McIntyre Machinery,* the product distributor in this case was a subsidiary of SMC. However, this fact alone does not require a different outcome than *J. McIntyre Machinery* because, as noted above, Plaintiffs have failed to articulate the requisite alter-ego theory and have failed to demonstrate the subsidiary-distributor has the requisite contacts with Idaho.

For all of these reasons, the Court concludes it does not have specific personal jurisdiction over SMC for the purposes of this case. Because this Court does not have personal jurisdiction over SMC, dismissal with prejudice is appropriate.

The Court notes that Defendants have requested attorney fees within their briefs in support of the Motion to Dismiss. Local Rule 7.1(b)(1) provides that "[e]ach motion,

other than a routine or uncontested matter, must be accompanied by a separate brief, not to exceed twenty (20) pages, containing all of the reasons and points and authorities relied upon by the moving party." Defendants have failed to file a separate brief in support of their request and the request is neither uncontested nor routine. Thus, Defendants' have violated Rule 7.1(b). *See Thompson v. Root Rents, Inc.*, No. CV-05-245-S-BLW, 2005 WL 2138680, at *1 (D. Idaho Aug. 31, 2005). Accordingly, the Court will not consider the request for attorneys' fees at this time, but will entertain a future motion that complies with the Local Rules.

## V. ORDER

The Court hereby ORDERS:

1. The claims asserted against SMAI are DISMISSED WITH PREJUDICE.
2. The Motion to Dismiss (Dkt. 9) is GRANTED. The above-entitled action DISMISSED WITH PREJUDICE.
3. The Court will issue a separate judgment in accordance with Fed. R. Civ. P. 58.
4. The Clerk of the Court is directed to close this case.

DATED: January 24, 2018

David C. Nye
U.S. District Court Judge